UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

A&S SURPLUS, INC.,

Plaintiff,

v.

CITY OF LAKEWOOD; UNITED STATES OF AMERICA; RUSSELL MARTIN; PETER JOHNSON; KEN HENSON; NATHAN ECHOLS; JERRY COLEY; and JOHN DOES 1-8,

Defendants.

CASE NO. 14-5375-RJB

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

This matter comes before the Court on Plaintiff's Motion for Partial Summary Judgment (Dkt. 51), Defendants City of Lakewood and Officers Russell Martin, Peter Johnson, and Ken Henson's Motion for Summary Judgment of Dismissal (Dkt. 58), Defendant United States and Nathan Echols' Motion for Summary Judgment and Qualified Immunity (Dkt. 60), and Defendant Jerry Coley's Motion for Summary Judgment and for Qualified Immunity (Dkt. 50). The Court has considered the pleadings filed in support of and in opposition to the motions and the file herein, and heard oral argument on May 26, 2015.

This case arises from a joint operation carried out by the Criminal Investigation Command ("CID") and Military Police Investigations ("MPI") units of Joint Base Lewis McCord ("JBLM"), the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), and the City of Lakewood Police Department ("LPD") on June 3, 2013, to recover allegedly stolen government property located at Plaintiff's military surplus store and warehouse. Dkt. 27. On August 14, 2014, Plaintiff A&S Surplus, Inc. filed the First Amended Complaint (Dkt. 27) in this action against the United States, Nathan Echols (former Special Agent with CID), Jerry Coley (Team Chief of MPI), Nicholas Willett (Sergeant and Investigator with MPI- now dismissed), Michael Collier, (Special Agent with the ATF – now dismissed), the City of Lakewood, Russell Martin, Peter Johnson, and Ken Henson (City of Lakewood Police Officers) and John Does 1-8 (now dismissed), making claims for violation of its Fourth Amendment rights pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) and 42 U.S.C. § 1983 and for violations of state tort law. Dkt. 27.

In its pending motion, Plaintiff moves for an order summarily determining that there was no probable cause for issuance of the warrants and that the warrants purportedly authorizing the search failed to describe the places to be searched and the persons or things to be seized with sufficient particularity. Dkt. 51. For the reasons stated below, this motion should be granted in part.

Defendants each move for summary dismissal of the claims against them, asserting that they are entitled to qualified immunity. For the reasons stated below, the individual Defendants motions should be granted.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

*1. Business of A & S Surplus*

Plaintiff A & S Surplus, Inc. is the owner and operator of The Foxhole, a retail store that sells surplus military goods. Dkt. 60-6, at 4. The Foxhole is located in a separate building next door to the A & S Surplus warehouse. Dkt. 54-10.

*2. Investigations of Thefts in 2012-2013*

CID investigates felony crimes that have a nexus to the military, including thefts of items valued at $5,000 or more. Dkt. 60-1, at 5. MPI also investigates military related crimes, but minor crimes – crimes of $5,000 or less. Dkt. 50-1, at 4. When these military investigative units have cases that take them off base, they often coordinate with local law enforcement. Dkt. 60-1, at 16.

In 2012 and in the months before June 2013, the MPI at JBLM received several complaints of theft of government property, sometimes for "TA-50" items. Dkt. 67-2, at 8. MPI often referred those complaints to CID. Dkt. 67-2, at 8.

During that time, CID investigated several different thefts of military property at JBLM. Dkt. 60-9. In addition to TA-50 items, some of the items stolen were: binoculars, Meals Ready-to-Eat ("MREs"), tasers, compasses, mine detector kits, a digital camera, a digital video camera, two computer monitors, a ruck sack and assault pack, and cots. Dkts. 60-4, at 7; 60-9, at 2-3; and 60-10, at 2. In many of these cases, soldiers sold the stolen government property to local military surplus stores off base. Dkt. 60-4, at 3-4. One of the CID investigators assigned to some of those cases is a defendant here – CID Special Agent Nathan Echols. Dkt. 60-1.

CID Special Agent Echols contacted the City of Lakewood Police Department regarding the stolen government property in March of 2013. Dkt. 60-5, at 3. Russell Martin, an investigator in

the department's robbery and property crimes unit, was assigned to help CID investigate the thefts and their possible connection to military surplus stores in the Lakewood area including The Foxhole and 92 Yankee, among others. Dkts. 60-5, at 3 and 59, at 24.

Special Agent Echols and Investigator Martin decided to ask for a search warrant for A&S Surplus and The Foxhole because during the investigations The Foxhole's name repeatedly "came up" as places that soldiers sold stolen government property. Dkt. 60-5, at 6. Martin stated that he believed that it was a "joint investigation" but that CID would be performing the search. Dkt. 60-5, at 7.

*3. CID Asked for Help Regarding Applying for and Executing the Warrants*

When CID investigations require search warrants off the base, it must coordinate with local law enforcement to get those warrants. Dkt. 60-1, at 16. Typically, CID provides the factual information to the local police department, which then prepares the warrant and affidavit with the information that CID provided based on CID's investigation. Dkt. 60-1, at 16.

Accordingly, on May 29, 2013, Special Agent Echols provided Investigator Martin with information gathered by CID. Dkt. 60-1 at 3-4, 27; Dkt. 85-1 at 9-15.

Investigator Martin wrote the three search warrants and the three affidavits in support thereof, for 92 Yankee, The Foxhole, and A & S Surplus. Dkt. 60-5, at 10. Aside from the names of the businesses and description of the location of the buildings, the affidavits and warrants are identical. 92 Yankee is not a party in this case.

Echols reviewed the warrants and affidavits in support of the warrants before they were submitted to the judge. Dkt. 60-1, at 15. The applications for the search warrants for 92 Yankee, A&S Surplus, and The Foxhole were presented to the judge at the same time. Dkt. 60-5, at 21. The warrants were issued and addressed "to any Police Officer in said state" (Washington).

There were state, not federal, warrants, and federal employees were granted no independent authority. Their role in the search was wholly based on the Lakewood Police Department's need for assistance.

*4. Execution of the Warrant*

Before execution of the warrant, a meeting was held among those who were participating in execution of the warrant. Dkt. 60-5, at 16-17. They planned to execute three warrants at the same time so that one location couldn't notify another, and potentially hide evidence. Dkt. 60-5, at 18-19. They discussed safety, the operational aspects of the warrants, and what the roles of the various agencies would be, including that the military police would search for and identify any military property in the buildings. Dkt. 60-5, at 20. Martin stated that the military members of the operation were responsible for identifying and seizing the property. Dkt. 60-5, at 16. The Lakewood Police Department was to document and photograph the identified government property. Dkt. 60-5, at 20. Clearly, the Lakewood Police Department did not have, without the help of federal employees, the knowledge, information, or ability to determine what items were "property belonging to the United States Government" or "property unauthorized for resale." During the searches, federal employees, using their knowledge and federal manuals and documents, determined what should be seized as "property belonging to the United States Government" or "property unauthorized for resale."

Items seized and not returned were inventoried and remain in the custody of the United States at Joint Base Lewis McChord.

## II. DISCUSSION

### A. MOTION FOR SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that no genuine issue exists as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the non-moving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). No genuine issue of fact for trial exists where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (non-moving party must present specific, significant probative evidence, not simply "some metaphysical doubt"); s*ee also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if sufficient evidence supports the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *see also T.W. Elec. Serv. Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the non-moving party must meet at trial—e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv. Inc.*, 809 F.2d at 630. The court must resolve any factual issues in controversy in favor of the non-moving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The non-moving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial

to support the claim. *T.W. Elec. Serv. Inc.*, 809 F.2d at 630 (relying on *Anderson,* 477 U.S. at 254). Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).

**B. FEDERAL CLAIMS AGAINST THE INDIVIDUAL OFFICERS**

To succeed on a *Bivens* claim, a plaintiff must show that (1) a person acting under the color of federal law (2) violated plaintiff's constitutional rights. *See Serra v. Lappin*, 600 F.3d 1191, 1200 (9th Cir. 2010). Likewise, to succeed on a 42 U.S.C. § 1983 claim, a plaintiff must prove that (1) the conduct complained of was committed by a person acting under color of state law, and that (2) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327 (1986).

There is no dispute that the Defendants here were acting under the color of federal and/or state law, nor is there any dispute that the Plaintiff's Fourth Amendment right to be free from unreasonable searches is violated when authorities conduct an unlawful search and seizure. The issue is whether the search was lawful, and if not, whether the individual Defendants are entitled to qualified immunity.

*1. Probable Cause.*

The Fourth Amendment to the United States Constitution provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

In its motion for partial summary judgment and in its opposition to Defendants' motions for summary judgment, Plaintiff argues that the Defendants violated its Fourth amendment right

against unreasonable searches and seizures by arguing that the warrants were not supported by probable cause and were not sufficiently particular. *See e.g*. Dkts. 51 and 66.

"Probable cause exists when 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Grubbs*, 547 U.S. 90, 95 (2006) (*quoting Illinois v. Gates*, 462 U.S. 213, 238 (1983)). Assessing whether probable cause exists is "a common sense determination." *United States v. Hall*, 113 F.3d 157, 159 (9th Cir. 1997). "Probable cause must support the search for and seizure of all items described in the warrant." *Bravo v. City of Santa Maria*, 665 F.3d 1076, 1085 (9th Cir. 2011). "A warrant expressly incorporates an affidavit when it uses suitable words of reference." *United States v. SDI Future Health, Inc*., 568 F.3d 684, 699 (9th Cir. 2009)(*internal quotations omitted*). In the Ninth Circuit, "suitable words of reference" exist where the warrant explicitly stated: '*Upon the sworn complaint made before me* there is probable cause to believe that the given crime... has been committed." *Id.*, at 700.

In regard to the evidence sought, the warrants provided:

> There is probable cause for belief that evidence, to include but not limited;
>
> 1) 1) [sic] Any property belonging to the U.S. Government and any property unauthorized for resale.
> 2) Any other items identified as being government property. Any papers, registrations, titles, documents, or effects that would establish ownership or occupancy of the business;
> 3) Any papers, documents, serial numbers or effects that would establish ownership of items inside the business or documents of transactions that have occurred.
> 4) Any tool or equipment that could be used to carry out the crime.
> 5) Fruits of the crime of Possession of Stolen Property 1st 9A.56.150 and/or Trafficking of Stolen Property 1st 9A 82.050.
>
> That said property is located inside the business.

Dkt. 60-12, at 2 and 4.

The affidavits in support of the warrant are expressly incorporated in the warrants here. Considering the affidavit in support of the search warrant for The Foxhole, probable cause was shown justifying a search for United States Property wrongfully held. (*See* Dkt. 60-12, at 2-3.)

To the extent Plaintiff further makes an additional claim for lack of probable cause due to judicial deception, the claim should be denied. To prevail on a § 1983 claim that a warrant lacked probable cause because of judicial deception, a plaintiff must show "that the defendant deliberately or recklessly made false statements or omissions that were material to the finding of probable cause." *Ewing v. City of Stockton*, 588 F.3d 1218, 1223 (9th Cir. 2009). Omissions or misstatements that result from negligence or mistakes made in good faith "will not invalidate an affidavit which on its face establishes probable cause." *Id.*, at 1224 (*internal citation omitted).* Plaintiff has failed to show either that any of omissions it points to, like failing to inform the magistrate judge that employees of The Foxhole reported the possibility that they purchased stolen MREs or the fact that the estranged daughter's signature on certain paperwork was from 2008, were "deliberately or recklessly made" or that those omissions were material to the finding of probable cause. These omissions were "highly unlikely to have substantially impacted the issuing judge's decision." *Ewing*, at 1224.

The affidavit in support of the search warrant to the A & S Surplus warehouse does not provide probable cause to search. The only showing that Foxhole contraband would be found in the A & S Surplus warehouse is nothing more than suspicion. The total showing is as follows: "The license for The Foxhole showed it was owned and operated by A & S Surplus. A & S Surplus is located next door to The Foxhole. . . . On the paperwork for A & S Surplus it shows that business as administration and stock for The Foxhole." Dkt. 60-13. That showing is insufficient to justify a search of a separate building with a separate address on the strength of

the possibility that some of the contraband described in the search warrant affidavits for The Foxhole may have found its way to the A & S Surplus warehouse.

2. *Particularity.*

The Fourth Amendment's particularity "requirement exists to prevent general, exploratory searches and indiscriminate rummaging through a person's belongings." *Dawson v. City of Seattle*, 435 F.3d 1054, 1064 (9th Cir. 2006)(*internal citation omitted*). "Although the description must be specific enough to enable the person conducting the search reasonably to identify the things authorized to be seized, . . . warrants which describe generic categories of items are not necessarily invalid if a more precise description of the items subject to seizure is not possible." *Dawson v. City of Seattle*, 435 F.3d 1054, 1064 (9th Cir. 2006)(*internal citation and quotations omitted*). Accordingly, "a search warrant need only be reasonably specific, rather than elaborately detailed, and the specificity required depends on the circumstances of the case and the type of items involved." *Ewing*, at 1228 (*quoting United States v. Brobst*, 558 F.3d 982, 993 (9th Cir.2009)). In determining whether a warrant is reasonably specific, relevant factors are:

> (1) whether probable cause exists to seize all items of a particular type described in the warrant; (2) whether the warrant sets out objective standards by which executing officers can differentiate items subject to seizure from those which are not; and (3) whether the government was able to describe the items more particularly in light of the information available to it at the time the warrant was issued.

*Ewing*, at 1228 (*quoting United States v. Lacy*, 119 F.3d 742, 746 n. 7 (9th Cir.1997)).

a. <u>All Items of a Particular Type</u>

In determining the particularity issue, the first issue to be considered, then, is "whether probable cause exists to seize all items of a particular type described in the warrant." *Ewing*, at 1228.

Probable cause did not exist to seize "**all** items of a particular type described in the warrants" for either A & S Surplus or The Foxhole - "any property belonging to the U.S. Government and any property unauthorized for resale." The Foxhole and A & S Surplus were legitimate dealers in surplus government property. The language of the warrants did not authorized seizure of all items of any particular type – indeed, no types of contraband were described. The generic description used cannot be reasonably said to describe any particular type or types of items.

b. Objective Standards

The second factor in determining whether a search warrant was reasonably specific asks whether the warrant sets out objective standards by which executing officers can differentiate items subject to seizure from those which are not. *Ewing*, at 1228.

The warrant was also deficient in failing to set out objective standards for the executing officers to determine what items should be seized and what should not be seized. It is not clear from the record whether the affidavits were served with the warrants or were available during the execution of the search. Further, although the federal defendants maintain that "any property belonging to the U.S. government and property not authorized for resale" "carries a very specific and finite meaning for military law enforcement" (Dkt. 60, at 17), defendants did not articulate with specificity what that phrase meant – in the warrants or in the affidavits in support thereof, and the warrants were not directed to military law enforcement. Sadly, such objective standards were available and were used by the federal employees involved in the search, but were not in the warrants. The "any police officers in the state," to whom the warrants were addressed had no standards whatever by which to determine what items were "property belonging to the United

States Government" or "any property unauthorized for resale." Nor did the warrants require that the police officers seek the assistance of federal employees, manuals, or other information.

c. Describe the Items More Particularly

The third consideration in deciding whether a search warrant is reasonably particular explores whether the government was able to describe the items more particularly in light of the information available to it at the time the warrant was issued. *Ewing*, at 1228.

At least some of the items sought could have been more particularly described at the time the warrants were issued. Echols testified that he drafted a list, "Items to be Taken Regardless," that he states was prepared right around the time the warrant was presented to the magistrate judge. Dkt. 54-4, at 21-23 and 62. He provided this list to the officers executing the search at each location. Dkt. 54-4, at 21-23 and 62. The list contained specific items like Kevlar body armor, advanced combat helmets, SAPI plates or ballistic inserts, M8 or M9 chemical paper, and protective gas masks. Dkt. 54-4, at 62. Other items were identified in the affidavits – but no such items were named in the warrants.

d. Conclusion

Plaintiff's motion for partial summary judgment (Dkt. 51) should be granted in part. The search warrants for The Foxhole and for A & S Surplus were invalid because the warrants did not particularly describe the things to be seized.

*2. Qualified Immunity.*

"[Q]ualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231, 129

S.Ct. 808, 172 L.Ed.2d 565 (2009) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).

Qualified immunity balances two important interests: the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. *Harlow v. Fitzgerald*, 457 U.S. at 815. The existence of qualified immunity generally turns on the objective reasonableness of the actions, without regard to the knowledge or subjective intent of the particular official. *Id*. at 819. Whether a reasonable officer could have believed his or her conduct was proper is a question of law for the court and should be determined at the earliest possible point in the litigation. *Act Up!/Portland v. Bagley*, 988 F.2d 868, 872-73 (9th Cir. 1993).

In analyzing a qualified immunity defense, the Court must determine: (1) whether a constitutional right would have been violated on the facts alleged, taken in the light most favorable to the party asserting the injury; and (2) whether the right was clearly established when viewed in the specific context of the case. *Saucier v. Katz,* 121 S.Ct. 2151, 2156 (2001). "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. While the sequence set forth in *Saucier* is often appropriate, it should no longer be regarded as mandatory. *Pearson v. Callahan*, at 129 S.Ct at 811. "The judges of ... the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id*.

The court has already addressed the first element of the qualified immunity analysis: because the warrants were invalid, Plaintiff's Fourth Amendment Constitutional rights would

have been violated on the facts alleged. The next issue is whether it would have been clear to reasonable officers that their conduct in securing the warrants and executing the searches were unlawful in the situation that they confronted.

"Section 1983 suits, like *Bivens* suits, do not support vicarious liability. Each government official, his or her title notwithstanding, is only liable for his or her own misconduct." *OSU Student Alliance v. Ray*, 699 F.3d 1053, 1069 (9th Cir. 2012)(*internal quotation omitted*).

"Where the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner or, as we have sometimes put it, in objective good faith." *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1245 (2012). "The fact that a neutral magistrate has issued a warrant authorizing the allegedly unconstitutional search or seizure does not end the inquiry into objective reasonableness." *Id.* There is an "exception allowing suit when 'it is obvious that no reasonably competent officer would have concluded that a warrant should issue.'" *Id. (quoting Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "The shield of immunity otherwise conferred by the warrant will be lost, for example, where the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* (*internal quotations and citations omitted*). The Supreme Court explains further,

> [T]hat the threshold for establishing this exception is a high one, and it should be. . . . "[i]n the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination" because "[i]t is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment."

*Id.*

Detective Coley is entitled to qualified immunity. Although he is a supervisor, he has shown that he was not in any manner in charge of this search. He assigned some of the agents who work for him to help out, told them about their roles, but did not actually read the warrants. He arrived at the scene to identify one or two items, but otherwise was not involved. His motion for summary dismissal should be granted.

Lakewood Officers Johnson and Hanson are also entitled to qualified immunity. It appears from the record that Officers Johnson and Hanson were present at the scene, served the warrants, and took inventory of the items removed. They did not identify any of the property to be seized. They were told by those supervising the search that they were to rely on the expertise of the military personnel there to identify "government property not available for resale." As to these officers, it cannot be said that in the circumstances presented, they acted unreasonably. Lakewood Officers Johnson and Hanson's motion for qualified immunity should be granted.

CID Special Agent Echols and Investigator Martin's motions for summary dismissal based on qualified immunity present closer questions, but should also be granted. Although the warrants lacked the particularity required by the Constitution, the officers had an appropriate plan in place that provided that the search be limited to properly identified items. That plan was followed during the search. It was objectively reasonable, and in objective good faith for Martin and Echols to believe that, in light of their planning, the identification of items in the warrants was sufficient – particularly in light of the municipal judge's stamp of approval.

The fact that in many cases generic descriptions of items to be seized have been approved by courts also supports Qualified Immunity for Marin and Echols. Although the court believes that the case-approved generic descriptions cited by Defendants each had more complete descriptions than existed in the case, officers in the field under the circumstances here could not

reasonably be expected to differentiate between acceptable and unacceptable generic descriptions – particularly where the description used was a common term for participants in the search.

Similarly, it was not objectively unreasonable, and, in fact it was in objective good faith, for Martin and Echols to believe that, due to the proximity of The Foxhole and A & S Surplus, the fact that A & S Surplus's business was "administration and stock" for The Foxhole, and that The Foxhole was owned and operated by A & S Surplus, that some of the contraband described in the warrant would be found in the A & S Surplus warehouse. While the court believes, and finds, that probable cause was not shown in the affidavit for the A & S Surplus warehouse, that is not so obvious that "no reasonably competent officer would have concluded that a warrant should issue." The *Messerschmidt*, (*supra)* exception to the district judge's finding should not apply here.

Both Defendants Martin and Echols are entitled to qualified immunity.

Any fault for the issuance of a warrant for A & S Surplus without probable cause, or for the warrants for The Foxhole and A & S Surplus without sufficient particularity, falls to the issuing judge.

**C. STATE LAW CLAIMS**

At least one motion includes a motion for dismissal of Plaintiff's state law claims asserted against the federal defendants. Dkt. 60. The parties have not fully briefed, or argued that issue. The parties should re-examine the state law claims in light of the rulings herein, and should also consider whether the court should decline supplemental jurisdiction over those claims if the effect of this order is to dispose of all federal claims.

## III. <u>ORDER</u>

For the foregoing reasons, the court finds that there are no material issues of fact to preclude the following findings and order. Therefore, it is hereby **ORDERED** that:

- Plaintiff's Motion for Partial Summary Judgment (Dkt. 51) **IS GRANTED IN PART**: There was no probable cause for the search at A & S Surplus, and the warrants lacked sufficient particularity for the searches at A & S Surplus and The Foxhole, and were therefore illegal searches. Plaintiff's Motion for Partial Summary Judgment is otherwise **DENIED**.
- Defendants City of Lakewood and Officers Russell Martin, Peter Johnson, and Ken Henson's Motion for Summary Judgment of Dismissal (Dkt. 58**) IS GRANTED** only as to Defendants Officers Johnson, Henson and Martin, and the federal claims against those Defendants are **DISMISSED.** The motion is otherwise **DENIED**.
- Defendant United States and Nathan Echols' Motion for Summary Judgment and Qualified Immunity (Dkt. 60) is **GRANTED** only as to Defendant Echols, and the federal claims against him are **DISMISSED**. The motion is otherwise **DENIED**.
- Defendant Jerry Coley's Motion for Summary Judgment and for Qualified Immunity (Dkt. 50) is **GRANTED**. Defendant Coley is **DISMISSED**.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 29th day of May, 2015.

ROBERT J. BRYAN
United States District Judge